# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ADVANCE PUBLICATIONS, INC.**,
    1 World Trade Ctr.
    New York, NY 10007

**THE ASSOCIATED PRESS**,
    200 Liberty St.
    New York, NY 10128

**CABLE NEWS NETWORK, INC.**,
    One CNN Center
    Atlanta, GA 30303

**CBS BROADCASTING INC. o/b/o CBS NEWS**,
    524 W. 57th St.
    New York, NY 10019

**THE E.W. SCRIPPS COMPANY**,
    312 Walnut St. Suite 2800
    Cincinnati, OH 45202

**GANNETT CO., INC.**,
    7950 Jones Branch Dr.
    McLean, VA 22107

**POLITICO LLC**,
    1000 Wilson Blvd., 8th Floor
    Arlington, VA 22209

**PRO PUBLICA, INC.**,
    155 Ave. of the Americas, 13th Floor
    New York, NY 10013

**THE NEW YORK TIMES COMPANY**,
    620 Eighth Ave.
    New York, NY 10018

        Plaintiffs,

v.

**EXECUTIVE OFFICE FOR U.S. ATTORNEYS**,
    U.S. Department of Justice
    950 Pennsylvania Ave. NW, Rm. 2242
    Washington, DC 20530

**FEDERAL BUREAU OF INVESTIGATION**,
    935 Pennsylvania Avenue, NW
    Washington, DC 20535

        Defendants.

Case No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Advance Publications, Inc., The Associated Press, Cable News Network, Inc., CBS Broadcasting Inc. on behalf of CBS News, The E.W. Scripps Company, Gannett Co., Inc., POLITICO LLC, Pro Publica, Inc., and The New York Times Company, by and through counsel, bring this suit against Defendants the Executive Office for United States Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI"). In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

1. This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief. Through FOIA, Plaintiffs seek an order compelling Defendants EOUSA and FBI to promptly produce copies of government surveillance videos of the January 6, 2021 riot at the United States Capitol, "the most significant assault on the Capitol since the War of 1812," during which "[t]he building was desecrated, blood was shed, and several individuals lost their lives." *Trump v. Thompson*, 20 F.4th 10, 18-19 (D.C. Cir. 2021).

2. In February 2023, the Speaker of the United States House of Representatives provided approximately 44,000 hours of these videos (the "Capitol Surveillance Videos") to a single cable television program, Fox News Channel's Tucker Carlson Tonight, and, on information and belief, the Speaker's Office has refused to provide the Capitol Surveillance Videos to any other news organization or journalist who has since sought access.

3. Plaintiffs here are among the many news organizations that have been denied access to the Capitol Surveillance Videos by the Speaker's Office. That denial of access is a stark change of pace for these Plaintiffs, as over the past two years they have diligently,

2

cooperatively, and successfully pursued and obtained access to thousands of videos of the Capitol riot that have been used as evidence or otherwise become judicial records in more than a hundred cases in this District against those charged with organizing or participating in the riot.

4. Pursuant to FOIA, Plaintiffs also sought copies of the Capitol Surveillance Videos from Defendants EOUSA and FBI. Defendants possess copies of the Capitol Surveillance Videos as well, and FOIA does not permit them to withhold public records after they have been provided to a member of the public.

5. Despite that clear and controlling "prior disclosure" doctrine, the EOUSA has constructively denied a FOIA request for the Capitol Surveillance Videos that these Plaintiffs submitted in February 2023. And even though it is leading the riot investigation and has published excerpts of the Capitol Surveillance Videos *on its own website*, the FBI has absurdly and improperly claimed that it searched for but was "unable to identify" the requested records.

6. As judges in this District have observed in releasing Capitol riot videos, "the events of January 6, 2021, are of deep national importance, so there is a strong public interest in seeing real-time images of what happened that day." *United States v. Munchel*, 567 F. Supp. 3d 9, 16 (D.D.C. 2021) (cleaned up) (quoting *In re Application for Access to Certain Sealed Video Exhibits*, 546 F. Supp. 3d 1, 7 (D.D.C. 2021)).

7. Plaintiffs now bring this lawsuit under FOIA to secure general, not merely selective, access to these government videos of monumental public interest and historical import.

## PARTIES

8. Plaintiff Advance Publications, Inc. is a diversified privately-held company that operates and invests in a broad range of media, communications and technology businesses. Its operating businesses include Conde Nast's global magazine and digital brand portfolio, including

3

titles such as Vogue, Vanity Fair, The New Yorker, Wired, and GQ, local news media companies producing newspapers and digital properties in 10 different metro areas and states, and American City Business Journals, publisher of business journals in over 40 cities.

9. Plaintiff The Associated Press is a mutual news cooperative organized under the Not-For-Profit Corporation Law of the State of New York.

10. Plaintiff Cable News Network, Inc. is a portfolio of two dozen news and information services across cable, satellite, radio, wireless devices and the Internet in more than 200 countries and territories worldwide.

11. Plaintiff CBS Broadcasting Inc. produces and broadcasts news, public affairs and entertainment programming. Its CBS News Division produces morning, evening and weekend news programming, as well as news and public affairs newsmagazine programs, such as "60 Minutes" and "Sunday Morning."

12. Plaintiff The E.W. Scripps Company is one of the nation's largest local TV broadcasters. It also operates national outlets Court TV and Scripps News.

13. Plaintiff Gannett Co., Inc. is one of the largest newspaper publishers in the United States. Its portfolio includes the newspaper *USA TODAY*, the USA TODAY Network, and hundreds of local media outlets in 45 states across the country.

14. Plaintiff POLITICO LLC is a nonpartisan media organization that publishes political and policy news on politico.com.

15. Plaintiff Pro Publica, Inc. ("ProPublica"), a non-partisan newsroom, publishes its reporting through its website, www.propublica.org. As an independent news organization dedicated to producing investigative journalism in the public interest, ProPublica has been honored with numerous awards, including six Pulitzer Prizes, and has published one or more

articles in partnership with more than 200 different news organizations.

16.     Plaintiff The New York Times Company publishes *The New York Times* newspaper and www.nytimes.com.

17.     Defendant EOUSA is an agency within the meaning of 5 U.S.C. § 552(f)(1). The EOUSA has possession and control of the records requested by the Plaintiffs.

18.     Defendant FBI is an agency within the meaning of 5 U.S.C. § 552(f)(1). The FBI has possession and control of the records requested by the Plaintiffs.

## JURISDICTION AND VENUE

19.     This action arises under FOIA. This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

20.     Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

21.     EOUSA has failed to comply with FOIA's time limit provisions, and therefore Plaintiffs are deemed to have exhausted their administrative remedies with respect to EOUSA pursuant to 5 U.S.C. § 552(a)(6)(C).

22.     Plaintiffs have exhausted their administrative remedies with respect to the FBI.

## FACTUAL ALLEGATIONS

**The January 6, 2021 Capitol Riot**

23.     On November 3, 2020, Joseph R. Biden, Jr. was elected President of the United States. Then-President Donald J. Trump, however, refused to concede, "claiming that the election was 'rigged' and characterized by 'tremendous voter fraud and irregularities[.]'" *Trump*, 20 F.4th at 17 (quoting President Donald J. Trump, *Statement on 2020 Election Results* at 0:34-0:46, 18:11-18:15, C-SPAN (Dec. 2, 2020)).

24. On January 6, 2021, Trump supporters gathered in Washington, D.C., to protest the election results. *Id*. By day's end, thousands of rioters had stormed the Capitol in a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI (Jan. 7, 2021) ("Wray Stmt."), https://www.fbi.gov/news/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721.

25. During this breach, "[a]pproximately 140 law enforcement officers were injured, and one officer who had been attacked died the next day." *Trump*, 20 F.4th at 19.

26. One week later, the U.S. House of Representatives adopted an Article of Impeachment against Donald Trump for incitement of insurrection. *See* H.R. Res. 24, 117th Cong. (Jan. 13, 2021), https://www.congress.gov/bill/117th-congress/house-resolution/24. In February 2021, House Impeachment Managers conducted a five-day trial before the U.S. Senate voted to acquit Trump. *See* Nicholas Fandos & Emily Cochrane, *Impeachment Trial: Trump Is Acquitted by the Senate*, The New York Times (Feb. 13, 2021), https://www.nytimes.com/live/2021/02/13/us/impeachment-trial.

27. Additionally, federal law enforcement agencies "deployed [their] full investigative resources . . . to aggressively pursue those involved in criminal activity." Wray Stmt. The Government has since charged more than 1,000 defendants with crimes related to the Capitol riot. *See Capitol Breach Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

28. Video evidence has been a focal point throughout the many high-profile proceedings arising from the Capitol riot. *See* Standing Order No. 21-28 (BAH) (D.D.C. May 14, 2021) at 2 (recognizing "[t]he significant public and media interest in the numerous criminal

cases arising from the January 6, 2021 violent breach of the United States Capitol . . . , for which the parties are routinely submitting video exhibits to the Court for use in pretrial proceedings").

**The Capitol Surveillance Videos**

29. The U.S. Capitol Police operates an "extensive system of cameras on U.S. Capitol Grounds" that is "part of a sophisticated closed-circuit video (CC[T]V) system." Decl. of Thomas A. DiBiase, *United States v. Pope*, 21-cr-128-RC (D.D.C. Mar. 17, 2021), Dkt. 71-1 ("First DiBiase Decl.") at ¶ 2.

30. Following the January 6 riot, the Capitol Police "knew that its footage of the riots would be essential to both the criminal prosecutions arising out of the events as well as to assist Congress and possibly other entities to understand how such a vast breach of security could occur." *Id*. ¶ 10. The Capitol Police therefore preserved all footage captured between noon and 8:00 p.m. on January 6. *Id*.

31. Since then, the Capitol Police have provided the full Capitol Surveillance Videos to a number of government agencies and officials, who have in turn published or released many CCTV video clips. *Id*. ¶ 11.

**Defendants' Access To And Release Of CCTV Videos**

32. The Capitol Police has provided the Capitol Surveillance Videos to the FBI "to assist in the investigation and prosecution of the cases arising out of the events of January 6, 2021." First DiBiase Decl. ¶ 12.

33. As part of its investigation, the FBI has published photos and videos seeking the public's help in identifying suspects, and several of these videos included CCTV video clips. *E.g.,* https://www.fbi.gov/video-repository/capitol-violence-91-afo-010621.mp4/view at 0:29 – 0:39 ("AFO #91" video, includes stationary surveillance footage from inside the Lower West Terrace); https://www.fbi.gov/video-repository/bolo174-175.mp4/view ("AOM #174 and 175"

video likewise consists of stationary surveillance footage from above a staircase within the Capitol building).

34. Additionally, thousands of video exhibits have been submitted by government attorneys in the prosecution of participants in the riot, and these Plaintiffs, as members of a larger Press Coalition, have applied for and been provided copies of video exhibits in hundreds of Capitol riot cases. *See Video Evidence Shown in the Capitol Insurrection Criminal Cases*, ProPublica (Updated Sept. 9, 2022), https://projects.propublica.org/jan-6-video-evidence/ (compiling many of the videos released to the Press Coalition).

35. Within these proceedings, the EOUSA, through its attorneys, has submitted as evidence, and ultimately released, hundreds of CCTV video clips. *E.g., id.*; *see also United States v. Torrens*, 560 F. Supp. 3d 283, 294 (D.D.C. 2021) (noting the "already extensive release of CC[T]V footage from the Capitol"); Resp. to Minute Order Regarding Additional Video Exhibits & Release, *United States v. Schornak*, 21-cr-278-BAH (D.D.C. Feb. 15, 2022), Dkt. 67 (listing seven CCTV video exhibits submitted to the judge and stating that "[t]he government has no objection to any of the videos submitted to this Court to be released to the public").

**Congressional Access To And Release Of CCTV Videos**

36. Immediately following the Capitol riot, the Capitol Police provided the Capitol Surveillance Videos to the Senate Rules Committee and the Committee on House Administration. First DiBiase Decl. ¶ 11.

37. The Capitol Police also provided clips to the House Impeachment Managers, and during the impeachment proceedings, a number of CCTV video clips were shown alongside a graphic depicting the rioters' movements through the Capitol building. *See full video of how insurrection at Capitol unfolded*, CNN (Feb. 10, 2021), https://www.cnn.com/videos/politics/

2021/02/10/security-footage-capitol-riot-plaskett-timeline-impeachment-trial-two-vpx.cnn (Capitol security video shown at 12:30, 17:30, 21:40, 22:50, 33:40, 34:34 during President Trump's second impeachment trial); *Impeachment Trial Shown Video of Assault of House and Senate Chambers and Shooting of Ashli Babbitt*, C-SPAN (Feb. 10, 2021), https://www.c-span.org/video/?c4945108/impeachment-trial-shown-video-assault-house-senate-chambers-shooting-ashli-babbitt (Capitol security video shown at 1:20, 4:45, 8:05, 11:28, 12:40, 14:45, 16:35, 18:47); *see also* Decl. of Thomas DiBiase, *United States v. Pope*, 21-cr-128-RC (D.D.C. Mar. 17, 2023), Dkt. 88-1 ("Second DiBiase Decl.") at ¶ 13 n.2 (noting "approximately 15 clips" were shown during Trump's impeachment proceedings).

38. CCTV video clips were also presented during the ten days of public hearings by the House Select Committee investigating the January 6 riot. *E.g.*, Jan. 6th Comm., *July 21, 2022 Select Comm. Hearing*, https://www.youtube.com/watch?v=pbRVqWbHGuo (Capitol security video at 56:20, 56:40).

39. Most recently, the Majority Staff Director of the Committee on House Administration ("CHA") requested that "CHA be given the same access to the USCP footage that had been provided to the January 6 Select Committee," and "[w]ithin days" the Capitol Police installed viewing terminals in the House Office Building. Second DiBiase Decl. ¶ 10.

40. The Speaker's Office has since provided only a single cable television program access to the Capitol Surveillance Videos, while indicating that it plans eventually to release the videos in some manner to the press and public. *See* Holmes Lybrand et al., *What to know about the Tucker Carlson January 6 footage*, CNN (Mar. 8, 2023), https://www.cnn.com/2023/03/06/politics/tucker-carlson-january-6-footage/index.html ("McCarthy's office said it is still working out the process to make the footage 'more widely available' but did not comment further.").

41. On February 24, 2023, Plaintiffs expressly requested copies of the Capitol Surveillance Videos from the Speaker's Office and leaders of both parties in the House and Senate. A true and correct copy of Plaintiffs' request letter is attached hereto as Exhibit 1.

42. Since then, Plaintiffs have continued to press the Speaker's Office for access to the videos as quickly as possible and on equal terms with other media requestors, only to be told that the Speaker's Office will not even provide a timeline for when such access *might* begin.

43. To date, the Speaker's Office has not provided these Plaintiffs access to the Capitol Surveillance Videos.

**Tucker Carlson's Access To And Release Of CCTV Videos**

44. During the February 20, 2023 episode of "Tucker Carlson Tonight," Fox News host Tucker Carlson announced that he and his colleagues had received "unfettered" access to "44,000 hours" of Capitol surveillance footage and would soon begin reporting on that footage.

45. On March 6, 2023, Carlson confirmed that, "thanks to the new Republican [Party's] Speaker's Office," his show "gained access to thousands of hours of surveillance video." *See Tucker Carlson: No honest person can deny this about Jan. 6*, YouTube (Mar. 6, 2023) at 1:43-52, https://www.youtube.com/watch?v=DMvqU2BBEa0; *see also* Second DiBiase Decl. ¶¶ 10-11 (confirming the Speaker's Office provided access to Carlson and his team).

46. Carlson represented that the Capitol Surveillance Videos depict police "escorting protesters through the building," *id.* at 5:15, and has shown dozens of CCTV video clips on his program. *See Tucker: This video tells a different story of Jan 6*, YouTube (Mar. 6, 2023), https://www.youtube.com/watch?v=Opy7MLGAPBk; *Tucker Carlson: There is no justification for this*, YouTube (Mar. 7, 2023), https://www.youtube.com/watch?v=Uo8y8zSr090; *Tucker: This is malicious*, YouTube (Mar. 21, 2023); https://www.youtube.com/watch?v=4CzUneleEiU;

*see also* Second DiBiase Decl. ¶ 14 ("approximately 40 clips" were shown during Carlson's March 6 and 7 programs).

**Plaintiffs' FOIA Request**

47. On February 24, 2023, days after Carlson publicly announced his "unfettered" access to the Capitol Surveillance Videos, Plaintiffs submitted a FOIA request to the EOUSA and the FBI seeking "copies of all closed-circuit camera footage recorded on January 6, 2021, inside the United States Capitol and on its surrounding outside grounds, on Capitol surveillance cameras." A true and correct copy of Plaintiffs' FOIA request is attached hereto as Exhibit 2.

48. Plaintiffs sought expedited processing of their FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E)(i) on grounds that the "newsworthiness of the records is fleeting, and the public should have an opportunity to read and view reporting about the CCTV videos from different news organizations contemporaneously." Ex. 2 at 2.

**The EOUSA's Response**

49. That same day, the EOUSA acknowledged receipt of Plaintiffs' request. A true and correct copy of the EOUSA's acknowledgment email is attached hereto as Exhibit 3.

50. On March 1, 2023, the EOUSA granted Plaintiffs' request for expedited processing of their FOIA request. That same day, EOUSA notified Plaintiffs that the FOIA request was assigned to the "complex track" and would take longer time for processing. True and correct copies of these letters are attached hereto as Exhibits 4 and 5, respectively.

51. Notwithstanding these messages, FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify a requester of, *inter alia*, the scope of the records that the agency will produce and the scope of the records that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

52. To date, the EOUSA has not produced records responsive to Plaintiffs' request.

53. To date, the EOUSA has not informed Plaintiffs as to the scope of the records, if any, that the agency will produce in response to the request.

54. To date, the EOUSA has not cited any allegedly applicable FOIA exemption(s) or otherwise identified any basis for withholding, in whole or part, any of the requested records.

**The FBI's Response**

55. On March 2, 2023, the FBI responded to Plaintiffs' FOIA request and stated that the agency "conducted a search of the places reasonably expected to have records" but was "unable to identify records subject to the FOIPA that are responsive to [Plaintiffs'] request." A true and correct copy of the FBI's response is attached hereto as Exhibit 6.

56. The next day, March 3, 2023, Plaintiffs appealed the FBI's response to the Department of Justice's Office of Information Policy ("OIP"). A true and correct copy of Plaintiffs' appeal is attached hereto as Exhibit 7.

57. As Plaintiffs explained in their appeal, "it defies belief that the FBI would be unable to locate" the Capitol Surveillance Videos given, *inter alia*, that the FBI is leading the investigation into the Capitol riot, that the Department of Justice has represented in court that it has "accumulated . . . more than 14,000 hours of camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds," and that the FBI has published clips and still images from the Capitol Surveillance Videos on its own website. *See* Ex. 7 at 1-2.

58. OIP acknowledged receipt of Plaintiffs' appeal on March 3, 2023, and assigned it reference number A-2023-00860. A true and correct copy of OIP's acknowledgment letter is attached hereto as Exhibit 8.

59. To date, OIP has not responded to Plaintiffs' appeal.

## CLAIMS FOR RELIEF

### COUNT I
### Declaratory and Injunctive Relief:
### Constructive Denial of Request in Violation of FOIA, 5 U.S.C. § 552
### (Defendant EOUSA)

60. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

61. FOIA provides this Court with "jurisdiction to enjoin [the EOUSA] from withholding agency records and to order the production of any agency records improperly withheld from [Plaintiffs]." 5 U.S.C. § 552(a)(4)(B).

62. The records Plaintiffs seek are agency records within the EOUSA's control.

63. FOIA requires that within no more than 20 working days of receiving a FOIA request, an agency must notify a requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

64. The EOUSA received Plaintiffs' FOIA request on February 24, 2023. Ex. 2.

65. Pursuant to FOIA, the EOUSA was required to respond to Plaintiffs' request by March 24, 2023. 5 U.S.C. § 552(a)(6)(A)(i).

66. To date, however, the EOUSA has not made and communicated to Plaintiffs a "determination" on their request within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

67. There is no basis under FOIA to withhold, in whole or in part, the records requested by Plaintiffs. EOUSA has wrongfully withheld agency records in violation of FOIA.

68. Plaintiffs request a declaratory judgment that the EOUSA has violated FOIA and that Plaintiffs are entitled to immediately receive the Capitol Surveillance Videos.

69. Plaintiffs further request that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue

an order enjoining EOUSA from withholding the Capitol Surveillance Videos and compelling their production.

## COUNT II
### Declaratory and Injunctive Relief:
### Constructive Denial of Administrative Appeal in Violation of FOIA, 5 U.S.C. § 552
### (Defendant FBI)

70. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

71. FOIA provides this Court with "jurisdiction to enjoin [the FBI] from withholding agency records and to order the production of any agency records improperly withheld from [Plaintiffs]." 5 U.S.C. § 552(a)(4)(B).

72. FOIA requires that within 20 working days of receiving a FOIA appeal, an agency must notify a requester of, inter alia, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

73. The records that are the subject of Plaintiffs' appeals are agency records within the FBI's control.

74. OIP received Plaintiffs' appeal of the FBI's response on March 3, 2023. Ex. 6.

75. Pursuant to FOIA, OIP was required to make and communicate to Plaintiffs a "determination" on their appeal no later than March 31, 2023. 5 U.S.C. § 552(a)(6)(A)(ii).

76. To date, OIP has not made and communicated to Plaintiffs a "determination" on their appeal within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii).

77. There is no basis to withhold, in whole or in part, the records that are the subject of Plaintiffs' appeal. The FBI has wrongfully withheld those records in violation of FOIA.

78. Plaintiffs request a declaratory judgment that the FBI has violated FOIA and that

Plaintiffs are entitled to immediately receive the Capitol Surveillance Videos.

79. Plaintiffs further request that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an order enjoining the FBI from withholding the Capitol Surveillance Videos in full, directing the FBI to properly search for the records, and compelling their production.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that the Capitol Surveillance Videos are public and must be disclosed;

B. Order Defendants to make the Capitol Surveillance Videos available to Plaintiffs, unredacted, and without further delay, and set a deadline for compliance;

C. Provide for expeditious proceedings in this action;

D. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant such other and further relief as the Court may deem just and proper.

Dated: April 12, 2023         Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Plaintiffs*