# Wilkinson Declaration

# EXHIBIT A

# Declaration of Jennifer Leigh Blackwell

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADVANCE PUBLICATIONS, et al. **)** | |
| **)** | |
| Plaintiff, **)** | |
| **)** | |
| v. **)** | Case No. 1-23-cv-01014-APM |
| **)** | |
| EXECUTIVE OFFICE FOR U.S. **)** | |
| ATTORNEYS and **)** | |
| **)** | |
| FEDERAL BUREAU OF INVESTIGATION. **)** | |
| **)** | |
| Defendants. **)** | |

### DECLARATION OF JENNIFER LEIGH BLACKWELL

I, Jennifer Leigh Blackwell, declare the following to be a true and correct statement of facts, pursuant to 28 U.S.C. § 1746:

1.      I am a Deputy Chief in the Criminal Division, United States Attorney's Office, District of Columbia. I am admitted to practice law in the Commonwealth of Virginia, and a member in good standing of the Virginia and D.C. Bar.

2.      As a Deputy Criminal Chief, I have oversight over the Criminal Division, including the Capitol Siege Section (CSS). Attorneys in CSS investigate and prosecute cases arising out of the January 6, 2021 riot at the United States Capitol. I have held this position since January 2023. I previously served as a Deputy Chief in CSS. I have been an attorney with the United States Department of Justice since October 2005 and have served in various capacities.

3.      Due to the nature of my official duties, I am familiar with the above-referenced litigation regarding the Freedom of Information Act (FOIA) request submitted to the Executive Office of United States Attorneys (EOUSA). The statements I make hereinafter are based on my review of the official files and records of the United States Attorney's Office (USAO-DC), my

own personal knowledge, and information I acquired through the performance of my official duties.

4.      I am aware that the Plaintiffs in this matter have requested certain closed-circuit television videos (CCTV) from the United States Capitol Police (USCP) from January 6, 2021, that are in the possession of USAO-DC. Specifically, I am aware that Plaintiffs requested:

> [C]opies of all closed circuit camera footage recorded on January 6, 2021, inside the United States Capitol and on its surrounding outside grounds, on Capitol surveillance cameras (the "CCTV videos").

*See* Plaintiffs' Complaint, ECF No. 1 at Exhibit 2.

5.      Beginning immediately after the events of January 6, 2021, the United States Attorney's Office started bringing criminal charges. As of July 19, 2023, the United States Attorney's Office has charged approximately 1,100 defendants with crimes related to January 6, 2021. The investigation is continuing against many of those defendants and others who are still unidentified.

6.      Following the events of January 6, 2021 at the United States Capitol, the FBI obtained CCTV footage from the USCP in order to investigate and prosecute the rioters and others who committed crimes at the U.S. Capitol on January 6, 2021.

7.      The FBI provided USCP CCTV footage it received from the USCP to the USAO-DC's contractor. This footage covers approximately an eight-hour period on January 6, 2021, beginning at noon and continuing to 8:00 p.m., and totals over 11 terabytes in size as measured in MP4 format.

8.      In March 2023, the USAO-DC received Plaintiffs' FOIA request from EOUSA. The USAO-DC maintains relevant USCP CCTV footage in video repositories for access and use by prosecutors working on cases arising out of the riot. The USAO-DC has also transferred specific USCP CCTV footage clips from its discovery repository to two repositories administered by both

the Federal Public Defender for the District of Columbia (FPD) and its National Litigation Support Team (NLST): one repository is accessible to legal defense teams of charged January 6 defendants (the FPD repository), and the other is accessible to January 6 defendants housed in the D.C. Department of Corrections (the DOC repository). A protective order, as described below, governs the evidence in the discovery repositories.

9.     USAO-DC set up a comprehensive system by which to provide discovery to the defendants charged with crimes occurring on January 6, 2021. There is a standard protective order (Protective Order) governing discovery in all January 6 cases. Unless an exception provided for in the Protective Order applies, there are restrictions on how materials designated as Sensitive or Highly Sensitive may be held, disseminated, reproduced, viewed and used by the defendants and/or their legal defense teams. All USCP CCTV footage provided to the FPD and DOC repositories is designated Sensitive or Highly Sensitive under the standard Protective Order.

10.     In cases where defendants and their attorneys have executed or been ordered to comply with the Protective Order, defendants and members of their legal defense team have been authorized to access USCP CCTV footage held in the defense video repositories. The Protective Order indicates that:

> **Limitations on Dissemination**. No Sensitive or Highly Sensitive materials, or the information contained therein, may be disclosed to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court.

11.     Prior to using any portion of the USCP CCTV footage in judicial proceedings, the USAO-DC submits a request to the USCP for use authorization.

12.     The USAO-DC has made publicly available some of the USCP CCTV footage pursuant to Standing Order No. 21-28, issued by former Chief Judge Beryl A. Howell on May 14,

2021. Specifically, the Standing Order provides that "[m]embers of the media seeking access to video exhibits submitted to the Court in Capitol Cases may file an application … to the presiding judge in the case, or if no judge has been assigned, to the Chief Judge, for determination, and the judge may seek the position of the parties." *See* Standing Order at 5. The Standing Order further provides that "[u]pon grant of such media application, the government shall make the video exhibit[s] available to any member of the media with necessary access credentials provided by the government, unless the order otherwise limits access." Standing Order at 5-6. The Standing Order provides that the Government would agree to make the exhibits subject to the access order available via electronic drop box.

13.     If a portion of the USCP CCTV footage is used in a public hearing, such as a detention hearing, sentencing hearing, or trial, and the Court issues the access order, the USAO-DC will upload the portion of the video to a secure electronic drop box folder housed on the USAfx system, which is accessible upon request by members of the media with the appropriate credentials. As of July 19, 2023, this folder includes over 2,100 video exhibits.

14.     Based on information and belief, the Plaintiffs in this litigation have access to the folder of USCP CCTV clips that have been made publicly available.

15.     The vast majority of the USCP CCTV footage, however, has not been made public by the USAO-DC. The USAO-DC is continuing to investigate subjects who committed crimes on January 6, 2021. The USAO-DC estimates that between 2,000 to 2,500 individuals entered the United States Capitol on that date, and many more thousands of people were present on the Grounds. As such, the USCP CCTV footage is continuing to be used in the ongoing investigation into the riot at the United States Capitol on January 6, 2021. The USAO-DC anticipates that, upon the conclusion of the investigation and prosecution of the defendants associated with crimes

committed on January 6, 2021, there will be many segments of the USCP CCTV footage that will not have been used in judicial proceedings and thus will not have been made publicly available through the electronic drop box housed on the USAfx system.

16.     A mass release of the non-public USCP CCTV footage would interfere with the ongoing investigation into the crimes committed at the U.S. Capitol on January 6, 2021, and as-yet-unidentified defendants. Prematurely releasing to Plaintiffs—and thereby the public—CCTV footage that has not been publicly disclosed by the USAO-DC would also interfere with the ongoing and future prosecutions related to the events of January 6, 2021. Potential defendants, upon release of the footage, could identify themselves, and take measures to avoid detection, damage or destroy evidence, and intimidate potential witnesses. For instance, upon studying the footage, a potential defendant could flee, or direct an accomplice to flee. Or, if a potential defendant identified themselves in the footage by a distinctive feature: like a tattoo or hairstyle, that person could take steps to remove the tattoo or change their hair, thus frustrating the government's attempts to identify them.  The potential defendant could also destroy evidence, including deleting phone evidence or social media posts, or disposing of physical clothing. Premature release of the USCP CCTV footage could also cause potential defendants and those who seek to minimize their conduct on January 6, 2021, to amplify, through traditional and social media snippets, their actions that day in a way that misleadingly characterizes their conduct. Such conduct could taint potential jurors and dissuade witnesses from cooperating with the investigation.

17.     These concerns above are in addition to those identified by the USCP regarding the security risk of release of this CCTV footage, and indeed, are particularly acute in the current

investigation into the January 6 riots, given the sheer number of those criminally implicated in the events of that day.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 25th day of July 2023.

*Jennifer Leigh Blackwell*
Jennifer Leigh Blackwell
Virginia Bar No. 481097
Deputy Chief, Criminal Division
United States Attorney's Office
For the District of Columbia
601 D Street, N.W.
Washington, D.C. 20004
Jennifer.blackwell3@usdoj.gov